IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRH-Garver Construction, LLC, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 22-cv-1449<br>)<br>) Judge Joan B. Gottschall |
| BankFinancial, N.A., | )<br>) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

Invoking this court's diversity jurisdiction, 28 U.S.C. § 1332(a)(1), plaintiff BRH-Garver, LLC ("Garver" or "Garver LLC"), filed a four-count amended complaint, ECF No. 6, against BankFinancial, N.A. ("BankFinancial"), alleging claims for breach of contract, specifically a letter agreement dated December 30, 2021; reformation of the letter agreement; promissory estoppel; and unjust enrichment. The court has two motions before it. BankFinancial moves to dismiss the amended complaint for failure to state a claim upon which relief can be granted. ECF No. 18; *see* Fed. R. Civ. P. 12(b)(6). After that motion was fully briefed, Garver filed a motion under 28 U.S.C. § 1412 to transfer this case to the United States District Court for the Southern District of Texas, where Garver's Chapter 11 bankruptcy case is pending. ECF No. 31.

## I. Background

According to the amended complaint, BankFinancial is a bank with a main office in Olympia Fields, Illinois. Am. Compl. ¶ 6. Sometime before December 2021, BankFinancial entered into a master equipment lease agreement (sometimes "MELA") with a predecessor company, the similarly named BRH-Garver Construction, L.P. ("Garver L.P."). *See* Am. Compl. ¶¶ 9–10. Consistent with the MELA, BankFinancial held liens on machinery used in Garver L.P.'s operations. Am. Compl. ¶ 9. In December 2021, plaintiff Garver LLC agreed to purchase "substantially all the assets and business operations" of Garver L.P. *Id.* At that time, the aggregate principal balance on the master equipment lease agreement was $4,098,096.58, and the total payoff amount, with accelerated interest, came to $5,027,744.29. Am. Compl. ¶¶ 10, 13.

The $929,647.71 difference between the principal and total payoff amount, which both parties refer to as the "prepayment penalty," is the bone of contention in this litigation. *See* Am. Compl. ¶ 11; Def.'s Mem. Supp. Mot. to Dismiss 2, ECF No. 19.

As the end-of-year closing date for Garver's purchase of Garver L.P.'s assets was approaching on or about December 28, 2021, a Garver L.P. representative contacted BankFinancial and requested an assignment of the MELA from Garver L.P. to Garver LLC. *See* Am. Compl. ¶ 12. Adam Brant, a BankFinancial vice president, responded the next day (Dec. 29, 2021) that BankFinancial would be unable to process or act on the assignment before the end of the year. Am. Compl. ¶ 13. Brant allegedly proposed an alternative:

> BankFinancial would accept the full Payoff Amount ($5,027,744.29) at the closing of the business acquisition scheduled for year end, and promptly (within two weeks) thereafter, work in good faith to enter into a new equipment lease on substantially the same terms as the MELA or, alternatively, some other mutually agreed refinancing arrangement for the aggregate financed principal amounts ($4,098,096.58); subject to credit approval and completion of the refinancing, BankFinancial would then repay to Garver the full Payoff Amount. This proposed arrangement was, according to BankFinancial, intended to put Garver in exactly (or substantially) the same position it would have been in had BankFinancial processed and approved the requested assignment of the MELA, while allowing Garver to close the sale of its business by year end as intended.

Am. Compl. ¶ 13.

The parties drafted a letter agreement dated December 30, 2021. *See* Am. Compl. ¶¶ 14–16. The letter agreement's signature page, ECF No. 6-1 at 2, contains an alleged scrivener's error. Am. Compl. ¶ 34. The name "BRH-Garver Construction, L.P." (the predecessor company) appears above the signature of Garver's Chief Financial Officer, Leslie Hess. The line, Garver alleges, should refer to plaintiff BRH-Garver Construction, LLC. Am. Compl. ¶¶ 34–35. The letter agreement stated that plaintiff Garver LLC would pay off the entire payoff amount of the master equipment lease agreement of approximately $5 million rather than the principal. ECF No. 6-1 at 1. The letter agreement further provides:

> [O]n before [sic] January 15, 2022 (the "**New MELA Date**"), BankFinancial will (i) enter into an equipment financing arrangement with Garver LLC on the same terms and conditions as are contained in the MELA (the "**New MELA**") and (ii) concurrent with the execution and delivery of the New MELA by the parties, BankFinancial will remit the entire Payoff Amount to Garver LLC, by wire transfer

>of immediately [sic] funds. No closing costs, transaction fees or expense reimbursement shall be owed by Garver LLC in connection with the New MELA.
>
>Alternatively, Garver LLC and BankFinancial may, by mutual agreement, (i) enter into an equipment financing arrangement with respect to the equipment leased pursuant to the MELA on such terms and conditions as the parties agree, such agreement to be evidenced by one or more definitive agreements executed by the parties (the "**New Financing Agreement**") and (ii) extend the New MELA Date for purposes of negotiating and/or documenting the New Financing Agreement. Concurrent with the execution and delivery of the New Financing Agreement by the parties, BankFinancial will remit the entire Payoff Amount to Garver LLC, by wire transfer of immediately [sic] funds. Any closing costs, transaction fees or expense reimbursement owed by Garver LLC in connection with the New Financing Agreement will be subject to the written agreement of the parties. At Garver LLC's option at any time during the negotiation and/or documentation of the New Financing Agreement, Garver LLC may elect not to proceed with the New Financing Agreement, in which case the parties shall promptly (and in all events within 15 days) enter into the New MELA in accordance with the provisions of the preceding paragraph, including, for the avoidance of doubt, payment of the Payoff Amount to Garver LLC upon the closing of the New MELA.

ECF No. 6-1 at 1.

On December 31, 2021, Garver LLC, relying upon the letter agreement, completed its purchase of Garver L.P.'s assets. *See* Am. Compl. ¶¶ 17–18. Garver LLC and BankFinancial negotiated the terms of a new financing agreement throughout January 2022, culminating in two financing agreements dated February 10, 2022 (collectively "financing agreement," Decl. of C. Keating Ex. 2-A & 2-B, ECF No. 19-1). *See* Am. Compl. ¶¶ 19–23. On that date, "for the first time, BankFinancial advised Garver that it intended to remit only the 'financed amounts' under the New Financing Agreement (i.e., $4,098,096.58 (less a $500 processing fee)) and not the entire Payoff Amount ($5,027,744.29)." Am. Compl. ¶ 23. Garver immediately objected, but BankFinancial has refused to remit the $929,647.71 difference between the principal and the payoff amount. Am. Compl. ¶¶ 23–25. In its briefing, BankFinancial argues, among other things, that the financing agreement does not reference the prepayment penalty; that it identifies the total financed amount as $4,098,096.58; and that the financing agreement contains a merger clause. *See* Def.'s Mem. Supp. Mot. to Dismiss 13.

In count I, Garver charges BankFinancial with breach of the December 30, 2021, letter agreement. Count II seeks reformation of the letter agreement to correct the alleged scrivener's error on the letter agreement's signature page. In counts III and IV, Garver pleads, respectively,

3

promissory estoppel and unjust enrichment claims in the alternative to its breach of contract claim. Am. Compl. at 8–12.

BankFinancial moved to dismiss the amended complaint for failure to state a claim. ECF No. 18. After the motion to dismiss was fully briefed, Garver LLC and another company filed voluntary Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the Southern District of Texas ("bankruptcy court"). *In re P&P Constr. Grp., LLC, & BRH-Garver Constr., LLC*, No. 23-90292 (Bankr. S.D. Tex. filed Apr. 12, 2023). In June 2023, Garver filed a motion in this court under 28 U.S.C. § 1412 to transfer this case to the Southern District of Texas for referral to the bankruptcy court. ECF No. 31.

## II. Analysis

In support of transfer, Garver argues that this "[p]roceeding is a potentially significant asset of BRH-Garver's bankruptcy estate" and notes that BankFinancial has filed an appearance in the bankruptcy case. Pl.'s Mem. Supp. Mot. to Transfer 2, ECF No. 32. The docket sheet confirms that BankFinancial has appeared in the bankruptcy court and is litigating an objection to another creditor's request to lift the automatic bankruptcy stay. The objection is based on BankFinancial's security interest in the equipment that is the subject of the February 10, 2022, financing agreement at issue in this litigation. *See* BankFinancial's Ltd. Objection to Stellar Bank's Emergency Mot. for Relief from Automatic Stay 2, *In re P&P Constr. Grp., LLC, & BRH-Garver Constr., LLC*, No. 23-90292 (Bankr. S.D. Tex. May 19, 2023), ECF No. 131. As of the hearing held by the bankruptcy court on August 1, 2023, the objection and related motion remain pending. Audio Recording of Aug. 1, 2023, H'rg, *In re P&P Constr. Grp., LLC, & BRH-Garver Constr., LLC*, No. 23-90292 (Bankr. S.D. Tex.), ECF No. 285.

### A. Statutory Authority for Transfer

In opposing transfer, BankFinancial argues, among other contentions, that § 1412 does not provide authority to transfer this case and that the more general venue transfer statute, § 1404(a), does not authorize the proposed transfer because venue would not be proper in the Southern District of Texas. *See* Def.'s Resp. Opp. Mot. to Transfer 3–11, ECF No. 36. The court

4

agrees with the latter argument that the general venue transfer statute, 28 U.S.C. § 1404(a), is unavailable on this record. Section 1404(a) states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought or to any district or division to which all parties have consented." As used in § 1404(a), the phrase "district where it might have been brought" means "the district where plaintiff has a recognized right to bring his case under the Venue Act and that this right was unqualified and absolute, not depending upon consent of the defendant, evidenced by waiver, entry of appearance, or otherwise." *Blaski v. Hoffman*, 260 F.2d 317, 320–21 (7th Cir. 1958), *aff'd,* 363 U.S. 335 (1960); *see also Van Dusen v. Barrack*, 376 U.S. 612, 623–25 (1964). In the amended complaint, Garver relies on the general venue statute, 1391(b), alleging that venue is proper in the Northern District of Illinois because (1) BankFinancial resides in this district; and (2) quoting § 1391(b)(2), "a substantial part of the events giving rise to the claims occurred in this District." Am. Compl. ¶¶ 7–8; *see also* § 1391(b)(1) and (2). Garver makes no argument that venue would be proper in the Southern District of Texas. *See* Def.'s Resp. Opp. Mot. to Transfer 9–10; Pl.'s Reply Supp. Mot. to Transfer *passim*, ECF No. 38. Accordingly, the court has no basis to conclude that § 1404(a) authorizes a transfer to the Southern District of Texas.

Under the bankruptcy venue transfer statute, "[a] district court may transfer a case or proceeding under title 11[, the Bankruptcy Code,] to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Section 1412 contains no language limiting the potential transferee district to one where the action might have been brought. *See id*. The parties dispute whether this case qualifies as a "case or proceeding under title 11" for § 1412 purposes. The following principles of bankruptcy jurisdiction frame the parties' arguments:

> With certain exceptions not relevant here, the district courts of the United States have "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Congress has divided bankruptcy proceedings into three categories: those that "aris[e] under title 11"; those that "aris[e] in" a Title 11 case; and those

5

> that are "related to a case under title 11." § 157(a). District courts may refer any or all such proceedings to the bankruptcy judges of their district, *ibid*. . . . .
>
> The manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved. Bankruptcy judges may hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11." § 157(b)(1). "Core proceedings include, but are not limited to," 16 different types of matters, including "counterclaims by [a debtor's] estate against persons filing claims against the estate." § 157(b)(2)(C).

*Stern v. Marshall*, 564 U.S. 462, 473–74 (2011) (brackets in original).

Garver does not contend that this case is a core bankruptcy proceeding. It argues instead that this case—a suit by the bankrupt Garver against one of its creditors, BankFinancial—is "related to" the core proceeding in the Southern District of Texas. *See, e.g.*, Pl.'s Reply Supp. Mot. to Transfer 2–3, 6. BankFinancial does not dispute that this case is related to Garver's bankruptcy case. *See, e.g.*, Def.'s Resp. Opp. Mot. to Transfer 3–7.

District courts across the nation and in this circuit have split over whether § 1412 authorizes the transfer of cases arising in or related to core proceedings. *See Cent. States Se. & Sw. Areas Pension Plan v. Lakeville Transp., Inc.*, 2018 WL 11387190, at *2 n.3 (N.D. Ill. July 2, 2018) (collecting lower court decisions in the Seventh Circuit but not reaching this issue); *also compare, e.g.*, *Multibank, Inc. v. Access Glob. Cap. LLC*, 594 B.R. 618, 621–22 (Bankr. S.D.N.Y. 2018), and *Onewoo Corp. v. Hampshire Brands, Inc.*, 566 B.R. 136, 139–40 (Bankr. S.D.N.Y. 2017), *with Schniper v. Servisfirst Bancshares, Inc*, 2022 WL 374838, at *6–7 (W.D.N.C. Feb. 7. 2022), and *Creekridge Cap., LLC v. La. Hosp. Ctr., LLC*, 410 B.R. 623, 627–29 (D. Minn. 2009). The Seventh Circuit has not ruled on this question.

Courts that read "cases or proceedings under title 11" narrowly to mean "a core proceeding of bankruptcy" do so because § 1412 does not explicitly refer to matters related to bankruptcy cases. *See, e.g.*, *Estimating Grp. LLC v. Rickey Conradt, Inc.*, 2021 WL 9958472, at *1 (S.D. Ind. Mar. 16, 2021) (quoting *Zohar CDO 2001-1, Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 462–66 (S.D.N.Y. 2020)); *see also Jackson v. Venture Dep't Stores, Inc.*, 1998 WL 778057, at *2 (N.D. Ill. Nov. 3, 1998) (dictum). But this reading effectively treats "cases" and "proceedings" as synonyms for a core bankruptcy proceeding. The statutory interpretation canon

6

disfavoring surplusage—"it is generally presumed that statutes do not contain surplusage"—counsels against such a reading of § 1412. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) (discussing this canon and its proper role in statutory interpretation). The statutory context does as well, for "cases" and "proceedings" have distinct meanings in bankruptcy law:

> [A] distinction must be drawn between a "case" in bankruptcy and a "proceeding." A case is commenced by filing a petition with the bankruptcy court. *See* 11 U.S.C. §§ 301–03. "A case includes the actual administration of the bankruptcy from the time of its filing until the case is finally closed." *Kotlicky v. Belford*, 64 B.R. 679, 680 n.2 (N.D. Ill. 1986) (citing *Stamm v. Rampco Foam, Inc.*, 21 B.R. 715, 723 (Bankr. W.D. Penn. 1982)). In contrast, a "proceeding" is a litigated matter connected to the bankruptcy case. *See id*. In essence, a bankruptcy "case" encompasses a "proceeding."
>
> Proceedings in bankruptcy are divided into three categories: 1) civil proceedings arising under title 11; 2) civil proceedings arising in a case under title 11; and 3) civil proceedings related to a case under title 11. *See* 28 U.S.C. §§ 157(a), 1334(b). Proceedings that can be said to "arise under" title 11 or "arise in" a case under title 11, "arise during the bankruptcy proceeding and concern the administration of the bankrupt estate, such as whether to discharge a debtor." *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994). The Seventh Circuit has adopted a narrow definition for proceedings "related to" a bankruptcy case, holding that the dispute must directly affect "the amount of property for distribution or the allocation of property among creditors." *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987). *Accord In re Fedpak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996); *In re Mem'l Ests., Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1991), *cert. denied*, 504 U.S. 986 (1992); *Home Ins. Co. v. Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989). A mere overlap between the bankrupt's affairs and another dispute is insufficient unless that dispute directly affects either the assets of the estate or their distribution to creditors. *See Home Ins.*, 889 F.2d at 749; *In re White Trailer Corp. v. HPA Asset, L.L.C.*, 222 B.R. 322, 325 (Bankr. N.D. Ind. 1998).

*Indep. Stationers, Inc. v. Vaughn*, 2000 WL 1449854, at *3 (S.D. Ind. Jan. 3, 2000) (footnote omitted).

As the Supreme Court has stated: "It does not make sense to describe a 'core' bankruptcy proceeding as merely 'related to' the bankruptcy case; oxymoron is not a typical feature of congressional drafting." *Stern*, supra, 564 U.S. at 477 (citations omitted). Given the distinction between bankruptcy cases and proceedings, the court finds persuasive the reasoning of those cases reading § 1412 more broadly as authorizing the transfer of cases "related to" core bankruptcy proceedings. *See, e.g.*, *Goodall v. Chrysler, Inc.*, 2017 WL 4076093, at *9 (C.D. Ill.

7

Sept. 14, 2017); *Indep. Stationers*, 2000 WL 1449854, at *3–4; *Creekridge Cap.*, 410 B.R. at 627–28.

### B. Balance of Public and Private Interest Factors

Having ruled that § 1412 authorizes transfer, the court must determine whether the convenience of the parties and witnesses and the interests of justice favor transfer. 28 U.S.C. § 1412. In making this determination, the court considers factors similar to those considered under the general venue transfer statute, § 1404(a). *See Jackson*, 1998 WL 778057, at *2. "With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (citations omitted).

The parties do not discuss these private interest factors in any detail other than to say that Garver's "tangible assets" are located in Texas while BankFinancial is based in Illinois. BankFinancial points to a "venue selection" clause in one of the contested written agreements, the financing agreement. *See* Def.'s Resp. Opp. Mot. to Transfer 10–11, 13–14. This clause states:

> Borrower hereby agrees that Lender shall have the option to choose the venue and forum of any litigation, action or proceeding arising directly or indirectly from this Agreement, Guaranty and/or any other document relating thereto, and Borrower hereby consents that same may be heard in any State or Federal court presiding in the State of Illinois, DuPage County; provided, however, if Borrower commences any litigation, action or proceeding against Lender, it may only do so in the State or Federal Courts located within the State of Illinois, DuPage County. The provisions of this Section do not prohibit Lender from commencing any necessary legal action or instituting appropriate proceeding in any court of competent jurisdiction or venue.

Decl. of C. Keating Ex. 2-A ¶ 13; Decl. of C. Keating Ex. 2-B ¶ 13.

Garver does not contest the validity or applicability of this clause in its reply. *See* ECF No. 38. In *Atlantic Marine*, the Supreme Court held that the presence of a valid forum selection clause "requires district courts to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). Only

the second affects this case. A court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. *Id.* at 64. Hence, the private interest factors here weigh "in favor" of this forum and against transfer. *Id.*

That said, forum selection clauses alter the private interest analysis because they dispel "any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and *conserving judicial resources that otherwise would be devoted to deciding those motions*." *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 711 (7th Cir. 2020) (emphasis in original) (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991)). The clause here permits BankFinancial, but not Garver, to sue in any forum it chooses. *See generally Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 755–57 (7th Cir. 1992) (discussing mandatory and permissive forum selection clauses). The one-sided nature of this clause partially eliminates the certainty and efficiency venue selection clauses ordinarily provide, thereby diminishing the clause's significance in the § 1412 balancing.

The court turns next to the interests of justice, also called public interest factors. *See Rsch. Automation*, 626 F.3d at 978. "[T]he 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Id*. (citing *Van Dusen, supra*, 376 U.S. at 626). Factors to be considered include "docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy." *Id*. (internal citations omitted).

The parties' analysis of these factors is limited. *See* Pl.'s Mem. Supp. Mot. to Transfer 5–7; Def.'s Resp. Opp. Mot. to Transfer 11–14; Pl.'s Reply Supp. Mot. to Transfer 3–4. BankFinancial contends that Illinois has an interest in this case because BankFinancial is an

Illinois resident, and a substantial portion of the negotiations and events of this case occurred in Illinois. Def.'s Resp. Opp. Mot. to Transfer 9–10, 13–14. The court agrees that this factor considered in the abstract modestly disfavors transfer. Still, the only concrete local interest BankFinancial identifies is a suspicion that Garver is attempting to obtain a more favorable ruling on contested choice of law questions. *See id*. at 13–14. The Supreme Court and the Seventh Circuit have cautioned courts not to place undue weight on courts' relative familiarity with the relevant law because "federal judges routinely apply the law of a State other than the State in which they sit." *In re Ryze Claims Sols.*, 968 F.3d at 709 (quoting *Atl. Marine*, 571 U.S. at 67). BankFinancial identifies no novel or particularly complicated choice of law issues nor any specific reason to believe that Garver will gain a tactical advantage on choice of law upon transfer. *See* Def.'s Resp. Opp. Mot. to Transfer 13–14. This factor therefore disfavors transfer, but not strongly so.

Courts analyzing § 1412 transfer motions also consider the following public interest factors unique to the bankruptcy context:

> (1) the economical and efficient administration of the bankruptcy estate, (2) the presumption in favor of the forum where the bankruptcy case is pending, (3) judicial efficiency; (4) the ability to receive a fair trial, (5) the state's interest in having local controversies decided within its borders by those familiar with its laws, (6) the enforceability of any judgment rendered, and (7) the plaintiff's original choice of forum.

*Goodall*, 2017 WL 4076093, at *10 (citing *Creekridge Cap.*, 410 B.R. at 629). The public interest factors "will 'rarely' outweigh the parties' private interests in enforcing a forum-selection provision." *In re Ryze Claims Sols.,* 968 F.3d at 708 (quoting *Atl. Marine*, 571 U.S. at 64).

BankFinancial contends that a transfer will not produce efficiencies in bankruptcy administration because BankFinancial will not consent to a bankruptcy judge hearing and determining this case and the counterclaim it intends to file if its motion to dismiss is denied in whole or in part. *See* Def.'s Resp. Opp. Mot. to Transfer 13. This argument is a red herring because BankFinancial does not account for the possibility that the presiding bankruptcy judge will prepare proposed findings of fact and proposed conclusions of law, which is the ordinary

and required practice for resolving matters within "related to" jurisdiction. *See Stern*, *supra*, 564 U.S. at 475 (citing 28 U.S.C. § 157(c)(1)). As cases deciding motions to withdraw the reference state, this referral procedure often promotes overall efficiency because the bankruptcy judge typically gains "substantial familiarity with the parties, their counsel, and the background issues of the case." *See, e.g.*, *Gecker v. Marathon Fin. Ins. Co., Inc., RRG*, 391 B.R. 613, 615–16 (N.D. Ill. 2008) (denying motion to withdraw reference); *cf. Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 684–85 (2015). BankFinancial offers no specific reasons to doubt that the referral process would be unlikely to produce these efficiencies in this particular case.

As the Seventh Circuit has explained, "[B]ankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets." *Elscint, Inc. v. First Wis. Fin. Corp.* (*In re Xonics, Inc.*), 813 F.2d 127, 131 (7th Cir. 1987); *see also Int'l Union of Operating Eng'rs Loc. 542 v. Mallinckrodt ARD, Inc.*, 2021 WL 915722, at *7–8 (E.D. Pa. Mar. 10, 2021). In the bankruptcy context, "Courts often find that the most important consideration when weighing the interest of justice is whether the transfer would 'promote the economic and efficient administration of the [bankruptcy] estate.'" *Goodall*, 2017 WL 4076093, at *10 (quoting *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979)). Due to the importance of promoting the efficient administration of the bankruptcy estate, courts have found that a § 1412 transfer is warranted, despite the presence of a forum selection clause. *See In re Cloud I Q LLC*, 2020 WL 2617036, at *9–10 (Bankr. E.D. Wis. May 22, 2020); *Indep. Stationers*, 2000 WL 1449854, at *7.

No party disputes that Garver's claims in this case are a substantial asset in bankruptcy. And BankFinancial does not disagree that the resolution of this case will affect substantially the availability of and distribution of assets to Garver's creditors. On the contrary, BankFinancial is actively litigating in Garver's bankruptcy case an objection based on its security interest in the equipment that is the subject of the February 2022 financing agreement at issue here. This court's review of the docket sheet and the recording of the bankruptcy court hearing held August 1, 2023, convinces it that the bankruptcy judge will likely need to become familiar with

the facts underlying this case and the parties' claims and defenses. The most important factor—promoting the efficient administration of the bankruptcy estate—therefore strongly favors transfer. On balance, the court concludes that the § 1412 public interest in promoting the economic and efficient administration of the bankruptcy estate outweighs the private interests discussed above.

### III.  Conclusion

For the reasons stated, plaintiff's motion under 28 U.S.C. § 1412 to transfer this case to the United States District Court for the Southern District of Texas is granted. Defendant's motion to dismiss the amended complaint for failure to state a claim is denied without prejudice and with leave to reinstate once the case has been transferred.

Dated:  August 18, 2023                                 /s/ Joan B. Gottschall
                                                        United States District Judge